IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01923-CNS-GPG

ESTATE OF NATHAN TIMOTHY SIMON,
by and through its personal representative Timothy Scott Simon;
TIMOTHY SCOTT SIMON, individually; and
BERNADETTE MARY SIMON, individually,

      Plaintiffs,

v.

SHERIFF JAMES VAN BEEK, in his official and individual capacities,
CAPTAIN GREGORY VAN WYK, in his official and individual capacities,
UNDERSHERIFF MIKE MCWILLIAMS, in his official and individual capacities,
DEPUTY SCOTT PETERSON,
DEPUTY DUSTIN OAKLEY,
EMT BERGON SHARP,
EAGLE COUNTY SHERIFF'S OFFICE,
EAGLE COUNTY DETENTION FACILITY,
EAGLE COUNTY BOARD OF COMMISSIONERS, and
CORRECTIONAL HEATHCARE COMPANIES, LLC d/b/a Correct Care Solutions, LLC d/b/a
Wellpath, LLC,

      Defendants.

---

## ORDER

---

    Before the Court are (1) the Eagle County Sheriff's Office Defendants' (ECSO

Defendants)[1] Rules 12(b)(1) and (6) Motion to Dismiss and (2) Defendants Correctional

Healthcare Companies, LLC (CHC) and Bergon Sharp's (CHC Defendants) Motion to Dismiss

---

[1] The ECSO Defendants are comprised of James Van Beek, Gregory Van Wyk, Mike McWilliams, Scott Peterson, Dustin Oakley, the Eagle County Sheriff's Office, the Eagle County Detention Facility, and the Eagle County Board of Commissioners.

Plaintiff's First Amended Complaint. (ECF No. 69, 73). The Court DENIES IN PART and GRANTS IN PART the ECSO Defendants' motion and GRANTS the CHC Defendants' motion for the following reasons.

## I. FACTS

This civil action arises from Defendants' alleged failure to provide constitutionally adequate medical care to Nathan Simon, resulting in his death. (*See* ECF No. 59). Plaintiffs are the parents, and Timothy Simon is the personal representative of the estate, of Nathan Simon, a pre-trial detainee who tragically committed suicide while in custody at the Eagle County Detention Facility (ECDF). (*Id.*, pp. 2-3). Plaintiffs allege that the ECSO was on notice that Nathan was suicidal in April and June 2019 when Nathan's girlfriend contacted the ECSO Defendants via email and phone alleging that he was demonstrating suicidal behavior. (*Id.*, p. 9). Plaintiffs allege that they called 911 in June and August 2019, asking for assistance after Nathan began expressing suicidal ideations. (*Id.*, p. 3). On August 2, 2019, Nathan was arrested and taken into custody by the ECSO but was released on bond on August 3, 2019. (*Id.*, p. 10). That day, Plaintiffs again contacted 911 because Nathan was continuing to express suicidal ideations. (*Id.*). Plaintiffs allege that they instructed the deputies to not believe Nathan if he denied his current mental state. (*Id.*, p. 11). The ECSO Deputies, Defendants Oakley and Peterson, detained Nathan on the afternoon of August 3, 2019, and an initial intake screener questionnaire was conducted. (*Id.*, p. 12). That evening, a CHC employee, Defendant Sharp, conducted a second intake screener questionnaire regarding his mental health. (*Id.*).

Plaintiffs allege that the information regarding Nathan's suicidal behavior was not communicated to the ECDF intake personnel by Defendants Oakley and Peterson, the responding

and arresting deputies. (*Id.*). Plaintiffs allege that ECSO and ECDF staff, despite having actual knowledge of Nathan's behavior, placed him in a single cell within the general population without any safety measures or suicide-prevention precautions. (*Id.*, p. 13). On August 5, 2019, Nathan was taken for a Court Advisement where he was referred to the "Bridges Program" for a mental health assessment due to Plaintiffs' concerns over his safety and behavior. (*Id.*, p. 14; ECF No. 69-2). This mental health assessment referral was emailed to ECSO and ECDF on August 5, 2019. (ECF Nos. 59, p. 14; 69-2, p. 2). Plaintiffs allege that Nathan was returned to his cell on August 5, 2019, and was unsupervised for at least two hours. (*Id.*, p. 3). Tragically, on August 5, 2019, Nathan died; his cause of death was listed as asphyxiation, consistent with hanging. (*Id.*).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th

Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### III.  ANALYSIS

Plaintiffs raise fourteen[2] claims in their First Amended Complaint: (1) violation of the Fourteenth Amendment through 42 U.S.C. § 1983 against Defendants Van Beek, McWilliams, Van Wyk, Peterson, Oakley, and Sharp in their official capacities; (2) negligent operation and dangerous conditions of a jail, in violation of Colorado Revised Statute § 24-10-106 *et. seq.*, against Defendant Van Beek, McWilliams, Van Wyk, and Peterson; (3) negligent and/or willful, wanton and reckless misconduct, in violation of Colorado Revised Statute § 24-10-106 *et. seq.*, against Defendant Sharp; (4) violation of the Fourteenth Amendment through 42 U.S.C. § 1983 against CHC; (5) negligence against CHC; (6) breach of contract by CHC under Colorado Revised Statute § 24-10-106 *et. seq.*; and (7) negligence by the Eagle County Board of Commissioners under Colorado Revised Statute § 24-10-106 *et. seq.*  (*Id.*, pp. 15-40).

#### A.    The ECSO Defendants' Motion to Dismiss

The ECSO Defendants move to dismiss under Rule 12(b)(1) and (6), arguing:  (1) Plaintiffs individually lack standing to pursue claims of a violation of Nathan's Fourteenth Amendment rights under § 1983; (2) qualified immunity; (3) no vicarious liability for Defendants Van Beek,

---

[2] Plaintiffs label the last claim as Count XIX but it should be Count XIV.  The Court will designate Plaintiff's claim of negligence against the Eagle County Board of Commissioners as Count XIV.  (*See* ECF No. 59, p. 38).

McWilliams, and Van Wyk; (4) no municipal liability; (5) lack of supplemental jurisdiction for state tort claims; and (6) section 17-26-126 is a "non-claim" statute.  (ECF No. 69, pp. 3-15).

### 1.  Plaintiffs' Standing - Fourteenth Amendment and § 1983

The ECSO Defendants argue that Plaintiffs, individually, lack standing to pursue claims of constitutional violations under § 1983 and that only the estate may prosecute such claims.  (ECF No. 69, p. 2).  However, Plaintiffs do not argue that they are raising the § 1983 claims individually but rather on behalf of Nathan's estate.  Timothy Simon is the personal representative of his son's estate and the estate has standing to pursue § 1983 claims against Defendants.  *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).  Accordingly, the claims cannot be dismissed for lack of standing.

### 2.  Qualified Immunity and Deliberate Indifference - Counts VII and VIII - ECSO Defendants Peterson and Oakley

When a defendant asserts qualified immunity, the plaintiff must show the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the defendant's challenged conduct.  *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotations omitted).  The Court may address either prong first.  *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013).  When challenging the conditions of their confinement, pre-trial detainees are entitled under the Fourteenth Amendment to the degree of protection applicable to convicted inmates under the Eighth Amendment.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted).   Under the Fourteenth Amendment, pretrial detainees have a constitutional right to adequate medical care.  *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018).  Courts review cases of pretrial detainee suicides through the lens of a claim "for inadequate medical attention" and that must be judged against the deliberate indifference to serious medical

needs test of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Est. of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (internal quotations omitted); *see also George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1250 (10th Cir. 2022).

When analyzing a motion to dismiss, courts examine "the defendant's conduct as alleged in the complaint" and the complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (internal quotations and citations omitted) (reversing the district court's decision that the official was entitled to qualified immunity at the motion to dismiss stage). Claims regarding qualified immunity are typically resolved at the summary judgment stage; thus, when a defendant moves to dismiss under the affirmative defense of qualified immunity, it "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Thus, at this stage of the litigation, Plaintiffs need "only allege enough factual matter" to state a claim that is "plausible on its face" and "provide fair notice to a defendant." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). If a plaintiff sufficiently alleges the deprivation of a clearly established constitutional right, then qualified immunity will not protect the defendant at this stage of the case. *Id*. at 1189.

### a. Clearly Established Law

To be clearly established law, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (internal quotations

omitted).  "The precedent must have clearly established the right in light of the specific context of the case, not as a broad general proposition."  *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir.) (citation and internal quotations omitted).  While a case does not need to have identical facts, the clearly established law should be "particularized to the facts" of a plaintiff's case and the "rule's contours must be so well defined [that] it is clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1268 (10th Cir. 2022) (citations and internal quotations omitted).

The Court agrees with Plaintiffs that, as alleged in the Amended Complaint, there was clearly established law in the Tenth Circuit in August 2019 that would have placed the ECSO Defendants on notice of a constitutional violation.  Indeed, in 2015, the Tenth Circuit held that in order for a court to find that a defendant acted with deliberate indifference in the context of a detainee suicide, especially under a theory of supervisor liability, "he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide."  *Cox v. Glanz*, 800 F.3d 1231, 1250 (10th Cir. 2015).  This holding was affirmed later when the Tenth Circuit reaffirmed that "prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk."  *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (10th Cir. 2021); *see also George*, 32 F.4th at 1257 (affirming district court's decision granting summary judgment for Defendants because Plaintiffs failed to establish that jail officials had knowledge of a substantial risk of suicide).

Here, Plaintiffs allege that they called ECSO multiple times prior to Nathan's intake on August 3, 2019, to warn them of Nathan's suicidal behavior and ideations and that the Eagle

County District Court ordered that Nathan participate in a screening and/or mental health assessment under the Bridges Program.  (ECF Nos. 59, pp. 11-12; 69-2).  Indeed, the Order Appointing Court Liaison was emailed to the County Sheriff, District and/or County Attorney, Defense Counsel, and the Bridges Program on August 5, 2019—hours before Nathan was allegedly left unsupervised in a general population cell and was able to commit suicide.  (ECF No. 69-2). The Court finds that Plaintiffs satisfy the pleading standard under Rule 12(b)(6) and that there was clearly established law putting the ECSO Defendants on notice that such conduct was unlawful in this specific situation.

### b.  Deliberate Indifference

To establish a claim of deliberate indifference under the Fourteenth Amendment, a pretrial detainee must show that a medical professional or prison official acted with deliberate indifference to the pretrial detainee's serious medical needs.  *Est. of Beauford*, 35 F.4th at 1262 (citations omitted).  While prison and jail officials, and "the municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners[,] . . . they [nonetheless] have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity."  *Cox*, 800 F.3d at 1247-48 (internal quotations and citations omitted).  "Claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody."  *Id.* at 1248 (alteration omitted).

The test for deliberate indifference to serious medical needs has an objective and a subjective component: (1) the harm suffered must be sufficiently serious; and (2) the prison official must know of and disregard an excessive risk to inmate health or safety.  *DuBois v. Payne Cnty. Bd. of Cnty. Comm'rs*, 543 F. App'x 841, 846 (10th Cir. 2013).  In their motion to dismiss, the

ECSO Defendants concede that suicide satisfies the objective component.  (ECF No. 69, p. 3 n.2).
The Court, therefore, will only analyze the subjective component.  Defendants argue that the
individual ECSO Defendants (namely, Defendants Peterson and Oakley) were not deliberately
indifferent because the facts alleged in the Amended Complaint only establish that Nathan "might
commit suicide at some point" but do not establish that Defendants Peterson or Oakley "actually
knew" that Nathan would commit suicide on August 5, 2019, or were present at the jail at the time
of his death.  (ECF No. 69, p. 4).

Under the subjective component, Plaintiffs must demonstrate that the "officials acted with
a sufficiently culpable state of mind."  *Vega v. Davis*, 673 F. App'x 885, 890 (10th Cir. 2016)
(internal quotations and citation omitted).  The subjective component is satisfied if the plaintiff
produces evidence, including circumstantial evidence, showing the prison official knows of or
disregards an "excessive risk" to the detainee's health or safety.  *Self v. Crum*, 439 F.3d 1227, 1231
(10th Cir. 2006) (quotations omitted).  A prison official must be aware of facts from which the
inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.
*See Est. of Beauford*, 35 F.4th at 1263.  A factfinder may conclude a prison official knew of a
substantial risk from the fact the risk was obvious.  *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th
1033, 1045 (10th Cir. 2022).

Plaintiffs argue that the ECSO Defendants are not entitled to qualified immunity because
they ignored Nathan's serious medical needs and have alleged sufficient facts to show that the
Deputies were aware of the risk that he would commit suicide.  Indeed, Plaintiffs specifically allege
in the Amended Complaint that Defendant Peterson and Oakley had previous contacts with
Plaintiffs regarding Nathan's suicidal ideations, were aware that Nathan was a suicide risk on

August 3, 2019, detained Nathan with this knowledge, and then failed to communicate this information to the staff at ECDF.  (ECF No. 59, pp. 27-31).  Furthermore, Plaintiffs allege that the Deputies were informed of Nathan's intent due to their 911 phone calls for assistance and were told, verbally and in-person, to not believe Nathan if he told them that he had no suicidal ideations. (ECF No. 59, pp. 10-11).  The ECSO Defendants' argument is especially unavailing given that the Eagle County District Court had referred Nathan to the Bridges Program for a mental health assessment and stated on the record "[t]he police were called as a result of . . . people's concern over your own safety."  (*Id.*, p. 14).  The fact that Plaintiffs informed the ECSO Defendants that Nathan was expressing suicidal ideations on August 3, 2019, and Nathan was referred for a mental health assessment on August 5, 2019, but then left unattended and unsupervised in a general population cell whereby he had the means to commit suicide sufficiently alleges—for the purpose of surviving a Rule 12(b)(6) motion—that the ECSO Defendants were aware of the risk of suicide and acted with deliberate indifference to Nathan's serious medical needs.  The ECSO Defendants' argument that the Deputies were not present at the time of Nathan's suicide is particularly unavailing.  Plaintiffs specifically allege that the ECSO Defendants left Nathan unattended, and that lack of supervision was a catalyst for his death.  Thus, the ECSO Defendants' motion to dismiss is denied regarding this claim.

### 3. *Supervisory Liability - Counts I, III, and V- ECSO Defendants Van Beek, McWilliams, and Van Wyk*

Defendants argue that Plaintiffs' claims against ECSO Defendants Van Beek, McWilliams, and Van Wyk should be dismissed for lack of supervisory liability.  While § 1983 does not permit liability under a theory of respondeat superior, a plaintiff can raise a claim of supervisory liability by establishing that there is an affirmative link between the supervisor and the constitutional

violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). As explained prior, Plaintiffs have alleged a constitutional violation that survives a motion to dismiss.

Thus, to establish an affirmative link, Plaintiffs must allege: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). First, a supervisor is personally involved in a constitutional violation when the supervisor actively participates in or acquiesces to the constitutional violation. *Ransaw v. Bornhoft*, No. 20-CV-03584-NYW, 2022 WL 715128, at *21 (D. Colo. Mar. 10, 2022). Second, the plaintiff must show a "sufficient causal connection." *Cox*, 800 F.3d at 1248. A "sufficient causal connection" exists between the supervisor's personal participation and the constitutional violation when "the defendant set[s] in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768. Third, the plaintiff must show the defendant acted with a "culpable state of mind." *Cox*, 800 F.3d at 1248 (internal quotations omitted). In the case of alleged violations of a plaintiff's Fourteenth Amendment rights, the applicable state of mind is deliberate indifference. *See Est. of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994); *Schneider*, 717 F.3d at 769. "Deliberate indifference" in the context of supervisory liability requires proof the supervisor disregarded a "known or obvious consequence" of their action, or that the supervisor "knowingly created a substantial risk" of a constitutional injury. *Schneider*, 717 F.3d at 769 (quotations omitted).

Here, Plaintiffs allege that the state court's mental health assessment referral was "emailed real time on August 5, 2019[,] to the ECSO/ECDF, again, providing actual, post-arrest pre-suicide

notice of the concern for Nathan Simon's safety." (ECF No. 59, p. 14). Plaintiffs also allege that Defendant Van Beek addressed the number of jail suicides that had occurred at ECDF one month after Nathan's death, noting that there had been two suicides in the last month and there was a need to establish a balance between securing the jail, screening detainees, and maintaining a level of "normalcy" for inmates. (*Id.*, pp. 14-15). Plaintiffs also allege that (1) Defendants were responsible for training the employees of the ECDF, (2) the Deputies had actual knowledge of Nathan's risk of suicide and failed to take protective measures, (3) Defendants failed to medically screen Nathan despite being on notice of his suicidal ideations, and (4) Defendants were deliberately indifferent to Nathan's serious medical needs. (*Id.*, pp. 15-18, 20-21, 23-24). The Court finds that Plaintiffs have alleged an affirmative link and have established a claim for supervisory liability and should be allowed to proceed to discovery.

### 4. *Monell and Municipal Liability*

Defendants next argue that the claims against Defendant Van Beek and the ECSO officials in their official capacities must be dismissed for lack of municipal liability under § 1983. (ECF No. 69, pp. 11-14). Local governing bodies and local officials sued in their official capacities can be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. To state a claim for municipal liability under § 1983, Plaintiffs must allege: "(1) that a municipal employee committed a constitutional

violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citation omitted).

A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal alterations and citations omitted).

Here, Plaintiffs have alleged claims that support a finding that there is an inadequate policy implemented for suicide prevention, failure to adequately train or supervise employees regarding suicide prevention and how to respond to 911 calls, and a failure to adequately screen and monitor suicidal detainees.  (ECF No. 59, pp. 16-17).  Concerning Defendant Van Beek, Plaintiffs have alleged that he should have been responsible for developing such policies, that he was responsible for training and supervising the other ECSO officials, and that he and the ECSO staff failed to act upon the state court's mental health referral on August 5, 2019, which had placed them on notice of Nathan's suicidal state.  (*Id.*).  These allegations are sufficient under Rule 12(b)(6) and the ECSO Defendants' motion to dismiss the municipal-liability claim is denied.

*5. State Tort Claims - Counts II, IV, VI, and XIV*

Finally, the ECSO Defendants request that the Court decline to exercise supplemental jurisdiction over the state law claims. (ECF No. 69, p. 15). Because the federal claims in the Amended Complaint have not been dismissed, this request to dismiss for lack of pendent jurisdiction is moot. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997).

The ECSO Defendants also move to dismiss Count XIV against the Eagle County Board of County Commissioners (BOCC) because Colorado Revised Statute § 17-26-126 is a non-claim statute. (ECF No. 69, p. 15). Plaintiffs argue that they did not raise any claim in the Amended Complaint based on this statute, but rather raised claims based on common law negligence and Colorado Revised Statute § 24-10-106. (ECF No. 76, p. 15). The ECSO Defendants, in their reply, argue that the BOCC does not owe a legal duty to pre-trial detainees at a jail under § 24-10-106. (ECF No. 78, p. 10).

The BOCC is a government entity that is immune from liability under the Colorado Governmental Immunity Act (CGIA), except under limited statutorily enumerated circumstances including the operation of a correctional facility as defined under Colorado Revised Statute § 17-1-102. The Supreme Court of Colorado recently held that section 24-10-106(1.5)(b) waived a sheriff's sovereign immunity for injuries to pre-conviction incarcerated claimants due to intentional torts and acts of negligence resulting from that entity's operation of any correctional facility or jail. *Cisneros v. Elder*, 506 P.3d 828, 832 (Colo. 2022). The Tenth Circuit has noted, however, that "a board of county commissioners does not have a duty to ensure an inmate's safety at the detention center [and] Colorado state law does not hold the BOCC responsible for the acts

14

of the sheriff or staff of a detention center in its county." *Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *6 (10th Cir. Jan. 10, 2007). The Court finds that Plaintiffs neither describe any policy or custom implemented by BOCC that violated Nathan's constitutional rights nor mention the BOCC at any other time in the Amended Complaint. Accordingly, the state statutory and common law negligence claim against the BOCC is dismissed for failure to state a claim.

### B.     The CHC Defendants' Motion to Dismiss

The CHC Defendants move to dismiss Counts IX, XI, and XIII under Rule 12(b)(6), arguing that dismissal is proper due to Plaintiffs' failure to allege a (1) violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Defendant Sharp in her official capacity; (2) violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against CHC; and (3) breach of contract claim against CHC. (ECF No. 73, pp. 5-15).[3]

#### 1.   *Deliberate Indifference - Count IX - Defendant Sharp*

A medical professional can be liable for violating the Fourteenth Amendment via § 1983 under the deliberate indifference standard if he "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference," because said medical professional is essentially denying the inmate access to medical care. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). In order to "establish gatekeeper liability, a plaintiff must still allege that the need for medical care was obvious to the prison

---

[3] Plaintiffs also allege a claim of negligent or reckless conduct against Defendant Sharp and a claim of negligence against CHC; however, the CHC Defendants do not move to dismiss Counts X and XII. The Court, therefore, will not address these counts.

official." *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016) (internal quotations omitted). "This is so because if a risk is obvious so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it." *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (internal quotations omitted).

The obviousness of the circumstances can arise when (1) "a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral"; (2) "a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition"; and (3) "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Self*, 439 F.3d at 1232. However, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.* at 1233. The subjective component has a high evidentiary hurdle because as long as the medical professional "provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Id.*

In the Amended Complaint, Plaintiffs argue that Defendant Sharp failed to properly interview Nathan or obtain an adequate history regarding his suicidal ideations or follow up with family members or with the arresting officers and therefore performed an incomplete screening for suicide risk. (ECF No. 59, pp. 31-33). In their response, Plaintiffs argue that Defendant Sharp was deliberately indifferent to Nathan's serious medical needs because she was aware of her defective screening measures, which resulted in an inability to identify if a detainee was a suicide risk. (ECF No. 77, p. 7). However, Plaintiffs' allegations do not rise to the deliberate indifference

standard because they fail to allege that Defendant Sharp had subjective knowledge of a substantial risk of suicide by Nathan.  Indeed, Plaintiffs alleged that Defendant Sharp had a complete lack of knowledge:

> Deputy Scott Peterson unilaterally refused to communicate or inform staff at the ECDF of this information, including that Nathan Simon was a suicide risk and to implement the appropriate suicide prevention precautions.

(ECF No. 59, p. 27).

Additionally, during the initial screening on August 3, 2019, Nathan informed Defendant Sharp that (1) he did not have a history of psychiatric treatment or medication, (2) had not expressed thoughts about killing himself; (3) did not have a suicide plan; (4) had not previously attempted suicide; (5) did not express feelings of helplessness or hopelessness; (6) or showed signs of depression.  (ECF No. 69-1, p. 3).  The intake form noted that a yes response would result in the notification of the Shift Commander and an immediate referral for mental health evaluation or immediate suicide watch until an evaluation could take place.  (*Id.*).  Based on the information that was before Defendant Sharp at the time of the screening, nothing manifested an obvious need for treatment or that would indicate to her that Nathan was at risk of committing suicide.  Plaintiffs allege that Defendant Sharp performed a "substandard, and dangerously incomplete" mental health screening of Nathan because he did not sign the form; however, Plaintiffs also allege that Nathan had a history of lying and being deceptive about the state of his mental health and that others should not believe his claims that he was not suicidal.  (ECF No. 59, pp. 2, 32).  Absent an obvious risk or need for medical treatment, the need for additional treatment is a question of medical judgment, which does not rise to the level of deliberate indifference.  *Sparks v. Singh*, 690 F. App'x 598, 608 (10th Cir. 2017) ("Although it put Mr. Laurence on notice of a potential risk, our legal

standard requires an obvious risk to create an inference of deliberate indifference."). While Nathan's death is truly tragic, the Court does not find that Plaintiffs allege a claim for deliberate indifference by Defendant Sharp and dismisses the claim.

### 2.  Monell - Count XI - Defendant CHC

As previously discussed, to establish municipal liability, a plaintiff must establish (1) "the existence of a municipal policy or custom"; and (2) "that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). However, the municipality cannot be held liable for violating the Fourteenth Amendment under § 1983 when there was no underlying constitutional violation by any of its officers. *Id.* Accordingly, Plaintiffs fail to state a *Monell* claim against CHC and the Court must dismiss this claim.

### 3.  Breach of Contract - Count XIII - Defendant CHC

The CHC Defendants move to dismiss Plaintiffs' breach of contract claim, wherein they alleged that Nathan was a third-party beneficiary of Defendant CHC's contract with Eagle County to provide medical care to detainees at the ECDF. The CHC Defendants argue that the claim must be dismissed because there is no implied contractual duty and the claim is subsumed by the Wrongful Death Act, Colorado Revised Statute § 13-21-201, *et seq.* (ECF No. 73, p. 14). Indeed, Plaintiffs must bring a claim under the wrongful death act. *See Hale v. Morris*, 725 P.2d 26, 28 (Colo. App. 1986) (holding that plaintiffs were unable to bring a breach of contract action individually but could bring a claim on behalf of the decedent, wholly derivative of said injury and death, under Colorado Revised Statute § 13–21–202). "Under Colorado law, there exists no other cause of action for the death of another other than a statutory claim brought under the Wrongful

Death Act." *Steedle v. Sereff*, 167 P.3d 135, 140–41 (Colo. 2007).  Accordingly, this claim is dismissed.

## IV.  CONCLUSION

Accordingly, the ECSO Defendants' motion to dismiss is DENIED IN PART and GRANTED IN PART and the CHC Defendants' motion to dismiss is GRANTED.  (ECF Nos. 69, 73).

IT IS FURTHER ORDERED that Count IX against Defendant Sharp, Count XI against Defendant CHC, Count XIII against Defendant CHC, and Count XIV against Defendant BOCC are DISMISSED.  Counts I – VIII, X, and XII remain active claims in the case.

IT IS FURTHER ORDERED that Defendant BOCC is DISMISSED from the case.

IT IS FURTHER ORDERED that the caption on all subsequent filings shall reflect the removal of Defendant BOCC as a Defendant in this case.

DATED this 27th day of October 2022.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge